Irene McNamara, as Administratrix of the Estate of Edward McNamara, Respondent, *v.* Eastman Kodak Company, Appellant, Impleaded with Others.

Negligence — joint tort feasors — release by one — tender and rescission — when settlement with one joint tort feasor will not bar an action against the other — offer by letter to repay money received and by reply to rescind and repay money to one joint tort feasor upon trial of action against the other — when such offer unavailing and ineffective.

Where in an action brought by the legal representative of an employee of a contractor, who erected a building, against the contractor and the owner thereof, for the death of such employee caused by injuries he received while working in the building, it is alleged that such injuries were the result of neglect of duty on the part of both the contractor and the owner, the contractor and owner are joint tort feasors and a settlement with the contractor will be a bar to an action against the owner as well as the contractor, unless it can be shown that the settlement and the release executed by the plaintiff is void or has been rescinded. In this case the plaintiff advanced the inconsistent theories that she was induced to execute what upon its face was a release of defendant's joint tort feasor by fraudulent misrepresentations that it was a mere receipt, and also by fraudulent misrepresentations as to the merits of the claim which she was releasing. *Held*, in respect of the first claim, that the evidence conclusively establishes that the plaintiff knew that she was executing a release and not a mere receipt. *Held*, also, in respect of the second claim that the evidence conclusively establishes that the settlement was a prudent and honest one, and further, that the evidence fails to show that the plaintiff promptly repudiated the settlement even if it was procured by fraud.

*McNamara* v. *Eastman Kodak Co.*, 190 App. Div. 928, reversed.

(Argued June 8, 1921; decided October 18, 1921.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 31, 1919, affirming a judgment in favor of plaintiff entered upon a verdict.

*Clarence P. Moser* and *Thomas J. Hargrave* for appellant. The defendant, if liable at all, is liable only as a joint tort feasor with John L. Mullen. (*McNamara* v. *Eastman Kodak Co.*, 220 N. Y. 180; *Brogan* v. *Hanan*, 55 App. Div. 92.) A release of one of two or more joint tort feasors releases all. (*Barrett* v. *Third Ave. R. R. Co.*, 45 N. Y. 628; *Gilbert* v. *Finch*, 173 N. Y. 455; *Brogan* v. *Hanan*, 55 App. Div. 92.) There is no evidence tending to sustain the claim that plaintiff, because of some fraudulent act of Mullen, or his agent, did not know that she executed a release. (*Smith* v. *Ryan*, 191 N. Y. 452; *Myers* v. *Metropolitan Life Ins. Co.*, 62 App. Div. 572; *Shaw* v. *D., L. & W. R. R. Co.*, 126 App. Div. 210; *Williams* v. *Wilson*, 18 Misc. Rep. 42; *Dorwin* v. *Westbrook*, 86 Hun, 363; Bigelow on Fraud, 73; *Smith* v. *Whitridge*, 140 App. Div. 484; *Reno* v. *Bull*, 226 N. Y. 546; *Brackett* v. *Griswold*, 112 N. Y. 454; *Lexon* v. *Julian*, 21 Hun, 577; 86 N. Y. 638; *Rose* v. *Saunders*, 38 Hun, 575; *Reiss* v. *Levy*, 175 App. Div. 938.) Assuming that the release was procured through fraud (an assumption clearly contrary to any evidence in the case), there is no evidence tending to sustain the claim that it was legally avoided. (*Urtz* v. *N. Y. C. & H. R. R. R. Co.*, 137 App. Div. 404; *Bakeman* v. *Pooler*, 15 Wend. 637; *Lewis* v. *Mott*, 36 N. Y. 395; *Gould* v. *Cayuga County National Bank*, 86 N. Y. 75; *Drobney* v. *Lukens Iron & Steel Co.*, 204 Fed. Rep. 11; *Alexander* v. *Katte*, 10 Abb. [N. S.] 449; *McLaughlin* v. *Syracuse Rapid Transit R. R. Co.*, 115 App. Div. 774; *Shaw* v. *D., L. & W. R. R. Co.*, 126 App. Div. 210; *Anderson* v. *Smitley*, 141 App. Div. 422; *Doyle* v. *N. Y., O. & W. R. R. Co.*, 66 App. Div. 398.)

*Eugene J. Dwyer* for respondent. The payment of $300 was made as a gratuity and the alleged release dated September 9, 1915, having been procured by fraud that went to its execution, it was void in its inception. (*Herman* v. *Fitzgibbons*, 136 App. Div. 288; *Walker* v. *Freedman*, 114 N. Y. S. R. 51; *Gilroy* v. *Straus B. R. Co.*, 157 N. Y. Supp. 165; *Wilcox* v. *Am. T. & T. Co.*, 176 N. Y. 115; *Cleary* v. *Municipal El. L. Co.*, 47 N. Y. S. R. 172; 139 N. Y. 643; *El. A. & R. Co.* v. *Greenberg*, 56 Misc. Rep. 514; *A. C. Savings Inst.* v. *Burdick*, 87 N. Y. 40; *Burroughs A. M. Co.* v. *Van Deusen*, 78 Misc. Rep. 643; *Scully* v. *B. H. R. R. Co.*, 155 App. Div. 382; *Bussian* v. *M., L. S. & W. Ry. Co.*, 14 N. W. Rep. 452.) The payment having been made by McWade as a gratuity, no tender was necessary. (*Cleary* v. *M. E. L. Co.*, 47 N. Y. S. R. 172; 139 N. Y. 643.) Even if tender was necessary, it was waived by Mullen and plaintiff only for the sake of caution offered to return the charity by letter and Mullen replied indicating that the tender would not be accepted. Plaintiff also offered to repay in her reply and actually tendered payment of the money at the trial. Mullen being a non-resident, the only place where plaintiff could make a tender was in court. (*Weyand* v. *Park Terrace Co.*, 202 N. Y. 23; *Hale* v. *Patton*, 60 N. Y. 234; *Hoad* v. *Parr*, 13 Hun, 95; *Angell* v. *Loomis*, 97 Mich. 5; *Lasker* v. *Bartlett*, 5 Cush. 359; *Trimble* v. *Williamson*, 49 Ala. 525; *Gardner* v. *Black*, 98 Ala. 938.)

HISCOCK, Ch. J. Plaintiff's intestate was in the employ of a contractor who was engaged in the construction of a building for the appellant. While so engaged he received injuries which caused his death and which injuries are claimed to have been the result of neglect of duty on the part both of the contractor and of the appellant. On a former appeal (*McNamara* v. *Eastman Kodak Company*, 220 N. Y. 180) we upheld this view deciding that on the evidence then presented a jury could be permitted to say

that appellant had been guilty of actionable negligence in respect of intestate. We do not think that there has been any such substantial change in the evidence upon the trial now under review in this respect as to lead us to change our views and for the purposes of this discussion we shall assume that the courts below were justified in holding that the appellant was guilty of negligence which contributed to the death of plaintiff's intestate. There are, however, other obstacles to plaintiff's recovery which we think are fatal to the present judgment.

On plaintiff's theory appellant and the contractor for whom intestate was working, one Mullen, were joint tort feasors and on perfectly well-settled principles a settlement with one would be a bar to an action against the other. The appellant insists that this is what has happened; that plaintiff in consideration of a sum of money made a settlement with the contractor and released him from any and all claims on account of the death of her intestate. In support of this claim it introduced in evidence together with other testimony a check for $300 stated upon its face to be in full settlement of plaintiff's claim against Mullen and indorsed by her, and also a general release by her to Mullen of all claims. It is conceded that these papers on their face do effect such a release and discharge of appellant's joint tort feasor, Mullen, as would be a bar to this action. It is insisted on the part of plaintiff, however, that the release and settlement evidenced thereby may be and have been avoided because of fraud perpetrated in behalf of Mullen in securing the same, and this brings us to the decisive query whether plaintiff did establish such fraud in respect of this release as to make it void or voidable and whether she has placed herself in a position where she can urge such fraud and claim such avoidance. Of course, it is manifest that if this purported settlement still remains effective as between plaintiff and Mullen it is effective as between plaintiff and this appellant in this action. It

cannot be held in this action to have been avoided as to appellant if it still remains effective as to Mullen.

Plaintiff urges two lines of fraudulent conduct by which as she claims she was induced to execute the purported general release.

In the first place, as we understand it, she claims that she was induced to sign the paper proving to be a general release by statements in substance that the money which was being paid to her was a mere gratuity and that the paper which she was signing was a simple receipt. If this is true and she was induced by misrepresentation to sign a paper which was entirely different than the one which she was asked and expected to sign, it is conceded by appellant, and we shall assume, that the paper would be void and certain acts in the way of rescission rendered unnecessary. We think, however, that it is conclusively established against plaintiff for the purposes of this action that she understood that she was about to make a settlement of her claims against Mullen and was receiving a sum of money as a consideration for such settlement and not as a gratuity. The check which was delivered to her on its face recited that it was " in full settlement of claim of Irene McNamara, administratrix, Estate of Edward B. McNamara, deceased, versus John L. Mullen," and on the back of the check directly above plaintiff's indorsement thereof were printed the words: " In full settlement of claim referred to on face of this draft." This draft was delivered to plaintiff and deliberately and at her own convenience she indorsed it and collected the money thereon. There is no suggestion that she did not understand the English language and, unless we are to exonerate her from any obligation to understand such language and from any responsibilities which may come from indorsing and collecting the money on a draft which so specifies the purpose for which it is given, we do not see how a jury can be permitted to say that this plaintiff thought that she was signing a receipt and not making a settlement. (*Wagner*

v. *Nat. Life Ins. Co.*, 90 Fed. Rep. 395.)    But there is further evidence which in our judgment even more conclusively establishes, if that were possible, as against plaintiff the knowledge that she was making a settlement with Mullen and not receiving a gratuity.    Upon a petition signed and verified by her setting out in substance the nature of her claim against Mullen and an offer by him to settle the same for $300 and expressing her desire to accept such settlement for certain reasons specified in the petition, an order was made by the Surrogate's Court approving the settlement and authorizing her to accept the money, as she subsequently did accept it by the draft which has been referred to, in settlement of her claim against Mullen.    This petition and this order respectively asked and granted leave to make a settlement of a cause of action and in every aspect repudiated any idea of a gratuity.    The order stands in full force and effect and so long as it thus stands it, in our opinion, conclusively establishes as between plaintiff and Mullen that she desired to make the settlement which was subsequently made and that she understood fully what she was doing in that respect.    Mullen, or those acting in behalf of him, have paid plaintiff money on the strength of this order authorizing her to accept the settlement and in our opinion the order and proceedings in Surrogate's Court cannot be vacated or avoided, certainly without notice to Mullen, who had a right to act on the faith thereof, and so long as they thus stand they conclusively establish plaintiff's knowledge of what she was doing and exclude this phase of her claim of fraud.

The plaintiff's other claim of fraud is, we think, somewhat inconsistent with and contradictory of the one which we have just discussed.    As we understand it, it is to the effect that plaintiff was induced to sign the release, indorse the check and accept the money in settlement of her claim against Mullen through false and fraudulent misrepresentations as to the validity and legal status

and strength of her claim. Of course, if plaintiff signed the release on the representation that she was receiving a gratuity and that the paper was a mere receipt she was not induced to sign a release by false representations as to the merits of her claim, and conversely, if she was induced by false representations to sign a release, she was not induced to sign a mere receipt by false representations as to the character of the paper. Disregarding this inconsistency, however, we pass to a discussion of this phase of plaintiff's claim of fraud as it was presented by the evidence on the trial.

It is somewhat debatable whether the plaintiff gave sufficient evidence of material false representations of facts to enable her to avoid the release which she signed, even if the jury found in her favor. But again assuming for the purposes of this discussion that her evidence was sufficient to permit a jury to say that she was fraudulently induced by material misrepresentations to sign the release and that, therefore, she could avoid it, we come to the question whether she did take the necessary steps legally to repudiate her settlement and escape the consequences thereof.

The rule within which she has attempted to bring herself is the familiar one that a party who has been induced by fraud to enter into a contract may rescind the same if he acts promptly on discovery of the fraud and, under ordinary circumstances, returns or offers to return whatever he may have received under the alleged fraudulent contract.

Plaintiff has performed only two acts by which she claims to have accomplished a rescission of this alleged fraudulent contract. In this action by her supplemental reply she tendered repayment and on the trial offered to pay into court with interest the sum which had been paid to her in behalf of Mullen. Some time prior to the trial there had taken place between plaintiff's counsel and Mullen a correspondence consisting of a letter from the former

and an answer by the latter. The letter of her counsel read as follows: "In order that it may not be claimed that Mrs. McNamara, as administratrix, has waived any of her rights, we hereby offer to pay you the sum paid to her with interest from the time of payment, and request that you advise us by return mail as to the depository at which you desire the money sent, or advise us as to any other method by which we may pay the money to you. We desire to make an effective and legal tender and do not wish to be met with the complaint that a legal tender was not made. We will be very grateful if you will advise us at once so we may place the money in your hands, or adopt any other method to effect payment that may be agreeable to you." Mullen's letter in reply read as follows:

"GENTLEMEN: I have your letter of the 4th inst., referring to settlement made with Mrs. McNamara. I am entirely satisfied that the settlement was made in the best of good faith with your client of which I have substantial conclusive proof. I see no reason why the matter need be discussed any further. Your client was unquestionably treated with proper consideration of which I am satisfied you will in due time be informed."

It seems obvious that the plea of repayment and offer to pay into court in this action were entirely ineffective to accomplish any rescission of her contract with Mullen. He was not a party to the action and so far as appears never had the slightest knowledge of her pleading or of her offer to deposit the money in court and, in our opinion, it was not in the remotest degree affected by these occurrences.

Neither do we think that the correspondence was effective to accomplish a rescission. It is the ordinary rule that in order to rescind a contract the party must restore or offer to restore any consideration received thereunder. Concededly the plaintiff has never restored

to Mullen the moneys which she received and it is equally plain that she has never made any legal tender thereof. While conceding this she claims that the correspondence which has been referred to amounted to a waiver by Mullen of any tender and further that she was not obliged to make any tender because he was a non-resident of the state. We do not think that Mullen's letter operated as a waiver of a tender and we doubt very much whether the rule which relieves an ordinary debtor from making tender to a creditor who resides out of the state in order to protect himself from the consequences of an apparent default, applies to this case where plaintiff is seeking to put herself in a position to attack a settlement made with a creditor who then resided outside the state and as a condition precedent thereof is compelled to perform certain acts. We, however, pass this question and place our estimate of plaintiff's attempted rescission upon broader grounds.

It does not appear whether plaintiff acted promptly after discovery of the alleged fraud in her purported rescission. But certainly she could not accomplish a rescission by mere mental attitude. It was necessary that she should plainly and decisively take the position of rescinding and so indicate to Mullen either by notice or by her conduct. We do not find in her letter anything which indicates in the faintest manner the attitude that she had been led by fraud into the execution of a contract and, therefore, elected to repudiate and rescind it. There is not the slightest suggestion of any fraud or misrepresentation, which vitiated the contract, or of any claim of right to repudiate it on that ground. The most that appears is that she was afraid that she had waived some undisclosed rights and, therefore, desired to return the money. She was not insisting upon a right; she was seeking to escape from a possible embarrassment. We think that the fair interpretation and purpose of her letter are made evident by what is said by her counsel in

his present argument in connection with the same. He states: " Immediately upon being informed by the attorneys for the Eastman Kodak Company after the reversal of the judgment of non-suit by the Court of Appeals, that the defendant claimed that plaintiff had released her cause of action, plaintiff's attorney wrote to Mullen " the letter in question. In other words, plaintiff attempted to get rid of a settlement because it threatened to embarrass her prosecution of the present action. But she did not accomplish this as we think. The law required her fairly to disclose her position to Mullen and insist upon her right to repudiate the contract with him by reason of his alleged fraudulent conduct. (*Upton* v. *Tribilcock*, 91 U. S. 45, 54; *Grymes* v. *Sanders*, 93 U. S. 55, 62; *McGee* v. *Remmel*, 148 Cal. 539, 547; *O'Shea* v. *Vaughn*, 201 Mass. 412, 425; *Cunningham* v. *Pettigrew*, 169 Fed. Rep. 336, 340; *Richardson* v. *Lowe*, 149 Fed. Rep. 626; *Blank* v. *Aronson*, 187 Fed. Rep. 241, 245.)

But farther than this we think that again plaintiff's successful progress upon this claim of fraud and rescission is barred, as was her other claim of fraud already discussed, by the proceedings in Surrogate's Court. The order in those proceedings expressly held that the settlement outlined by plaintiff in her petition and subsequently made was a proper one and authorized it to be made. Subsequently and presumably upon the strength of this order and authority Mullen paid his money and acquired his release. Under such circumstances it seems to us that the order so long as it stands conclusively establishes between the plaintiff and Mullen that the settlement was a prudent and honest one and one which the wrong-doer as well as the administratrix might safely make. If it does have this effect, necessarily it excludes the idea that a settlement was induced by fraud.

For these reasons, therefore, we think the judgments appealed from should be reversed and a new trial granted, costs to abide event.

CRANE, J. (dissenting).   The defendant was erecting a sixteen-story office building in the city of Rochester in August of 1912.   The husband of the plaintiff, one Edward B. McNamara, was working as a riveter for John L. Mullen who had the contract for the steel work. McNamara was working on the roof of the building which was over the sixteenth floor and being ordered by his foreman to place some boards on the beams on the sixteenth floor so as to protect men below from falling rivets, he attempted to lift one of these boards and fell through the unprotected opening or well to the floors below and was killed.   The action is brought against the Eastman Kodak Company, the owner of the building, for its failure to comply with the Labor Law (Cons. Laws, ch. 31), section 20.   This says the contractors for the iron or steel work of buildings in the course of construction or the owners of such building shall thoroughly plank over the entire tier of beams.

Mullen, who would be equally liable with the owner, has not been sued as he is a non-resident and could only be reached by attachment of property in this state.   It is claimed by the defendant here that the statute does not apply as the work at the sixteenth floor had been finished and beams were being removed.   There are two answers to this.   Work on the sixteenth floor was not finished as the rivets were being driven in by compressed air and the floor had never been covered with boards as there were only forty or fifty boards lying around loose and the place at which McNamara fell had never been covered.   *Second,* we passed upon the evidence in this case in *McNamara* v. *Eastman Kodak Company* (220 N. Y. 180), and held contrary to the courts below that the evidence was sufficient to present a question of fact to the jury as to whether the defendant had complied with the Labor Law.   The evidence now is not materially different than it was before, nor is it claimed to be by the appellant here.

·Another question, however, has arisen in this case not before presented.

Mullen, the contractor, and the Kodak Company, the owner, were joint tort feasors. A release of one without reserving rights as to the other would probably release both. The plaintiff has given a general release to Mullen without reserving any rights as to the Kodak Company and the defendant Kodak Company has set up the Mullen release by supplemental answer. The release was given or obtained under the following circumstances:

In August of 1915 the state of litigation was this. The complaint had been dismissed on a trial before Judge Sutherland and the Appellate Division had affirmed the ruling. The case was in this court, where as above stated in February of 1917 the dismissal was reversed. Mullen, the employer of the deceased, was not a party to this litigation although no doubt he felt some responsibility for the action. On April 13, 1915, Mrs. McNamara wrote to Mr. Mullen a letter. Therein she states her deplorable condition after the loss of her husband, the hard work by which she had to pull out a living for herself and daughter and among other things says: " I understand now that you had made him (Lawyer Dwyer) an offer to settle of which I did not know of at the time. As I am a poor woman and have nothing only what I can earn in a day, I feel as if you could settle with me with [without] a lawyer or suit.   *   *   *   I thought instead of giving it to lawyers you could settle with me. Of course you must understand it was pretty hard for me to be left alone and have to give up a strong young husband."

This letter was never answered. In response thereto, however, one McWade on August 25, 1915, called upon the widow at her home in Rochester and said in substance that Mr. Mullen had received the plaintiff's letter and was willing to make a gift to her of $300. He also said Mullen was not liable for the accident to the deceased and two years had outlawed the claim if he were, but

that he was willing to make a gift. When Mrs. Mc-Namara spoke of her lawyer (Mr. Dwyer), McWade said it was unnecessary to see him as this was a gift of money from Mullen and the litigation against the Kodak Company had ended; that her case had finally been dismissed. McWade did not represent Mullen but was an adjuster for a casualty company.

McWade went to Lawyer Bechtold's office in Rochester which was in the same building with Dwyer, the attorney for the plaintiff. McWade told Bechtold that Mullen was to make a gift to the plaintiff of $300 and said that she was represented by Cleveland attorneys. This, of course, was known to McWade to be a lie. Bechtold testifies that McWade told him nothing about any pending litigation in the state of New York. McWade, himself, swears that " Some one raised the question of the suit against the Kodak Company and then I believe that I stated that this case was concluded, had been settled; that a higher court had passed on it and that it was over." The question was asked of him: " Did you say to her, in words or substance, that you were paying this money to her practically as a gift? Answer. Well, I will have to answer this, yes."

In the afternoon of the 25th of August, the widow called at the Rochester Hotel and signed a paper in which she agreed to give a full and proper release. Later, on September 3, the plaintiff was called down to Bechtold's office where she went with her sister and a little child. The plaintiff is partially deaf. On this third day of September was signed a petition for letters of adminis-tration apparently acknowledged by her. She signed a bond. She signed a petition for leave to settle the action, and swore to it and on the 9th day of September, 1915, after the order of the surrogate authorizing settlement, signed the release. The papers signed on September 3, the plaintiff swore positively were not read to her but were presented by McWade in Bechtold's office who told

her where to sign her name and that the purpose was to obtain a receipt for Mr. Mullen to keep his books straight. According to the testimony of the plaintiff, she never knew she was signing a release of any claim or releasing the Kodak Company or affecting in any way her rights against the Kodak Company. She supposed she was signing a receipt. A few excerpts from the plaintiff's testimony on this point. " He said he was a representative of Mr. Mullen and Mr. Mullen had sent him to me, that after two years had elapsed my case against Mullen was outlawed, and that he was offering me $300 as a charitable gift. He said as this was a gift of charity from Mr. Mullen that it would not be necessary to consult with Mr. Dwyer. He said I would have to come down to Mr. Bechtold's office in order to sign a paper which would give a receipt on Mr. Mullen's books that he had delivered me this $300 in charity.

" Nothing was said about settling any claim or signing a release, and papers were not read. Q. What did you believe Exhibit 31 was? A. A receipt." Exhibit 31 is the release in question.

Mr. McWade was present when she signed the other papers. She says she did not swear to anything. All the papers were signed in Mr. Bechtold's office and she did not read them nor swear to them.

" Q. Did you believe the statement made to you by Mr. McWade to which you testified that the execution of these papers and the acceptance of this $300 would not in any manner affect your claim for damages for the death of your husband?

"A. Yes (folio 1292), I took the charitable gift thinking as his representative assured me, it would in no way affect my case against the company." (Folio 1310.)

The sum and substance of it all is that a runner for a casualty company got Mrs. McNamara to sign papers releasing her claim against Mullen upon the representation that it was a charitable gift and not a settlement of

any claim; that it in no way affected her rights against the Kodak Company; that her case against the Kodak Company had been finally dismissed anyhow and that she could get nothing from it and that the papers she was signing were simply receipts or papers in the nature of a receipt for Mullen's books.

It is a noteworthy fact that none of the witnesses who took the acknowledgments or were present at the signing of the papers remembered anything about the transaction. On this evidence, I think a question was presented for the jury as to whether the plaintiff was overreached or defrauded in signing the release.

If I were left to decide this case as a juror or according to the weight of testimony I probably would decide against the plaintiff. My judgment would be to hold her with knowledge of the contents of all these papers which she apparently signed and acknowledged and yet I know that my feeling in this direction should not affect my judgment in passing upon the question as to whether there be any evidence to overcome such a conclusion. It may be and it frequently has happened that fraud and deception are perpetrated by negligence runners on the poor and uneducated and that they are easily led to sign papers in the sight of money without knowing the contents. The question here is whether there is any evidence of fraud and deceit. I have stated it above and conclude that in my judgment there is some evidence justifying a jury in finding that the plaintiff thought she was accepting $300 as a gift and simply signed a receipt and did not sign a release, knowing it to be such and that, therefore, she never released her claim against the defendant here.

The judge's charge has been criticised by the appellant in his points, but in my estimation it is very fair. There are two aspects of this case. The principal one is this: If the plaintiff thought she was signing a receipt and not a release and was tricked into this belief it was not necessary for her to tender back the $300 paid.

This was the principal evidence of the case as I have indicated above.

On the other hand, if the plaintiff knew that she was signing a release, but was deceived into doing it by false representation as to the facts or results, it would be necessary for her to tender back the $300. This has usually been done in a pleading where the plaintiff has sought to get rid of a release. It is not necessary to resort to an action in equity. The plaintiff in this case by an amended reply to the supplemental answer offered to repay the money. On the trial the plaintiff's attorney offered to repay the money but to whom should the plaintiff repay the money? The defendant here is seeking to take advantage of a rule of law which is rapidly going into the discard. (Columbia Law Review, May, 1921, note, p. 491.) The money was not paid by the defendant but by a casualty company for a person in Pennsylvania named Mullen. He was not a party to the action and money could not be paid into court for his benefit. It could not be paid to the defendant here as it was not its money. No order of the court could in any way affect or touch the rights of Mullen. The plaintiff, therefore, under this second rule of law requiring a tender did everything she could when she offered to pay back the money and her lawyer wrote a letter to Mr. Mullen offering to pay it back.

Mullen refused to take the money and I think there is much in the point that tender has been waived under the circumstances.

Referring to McWade's statement that the Kodak Company case was over, the judge said: " That was a statement of fact. If that was a false statement of a material fact and she relied *on it* and was deceived by it and was thereby induced to execute this release which she would not have done if that statement of fact had not been made to her, in short, if she was defrauded by a false rep-

3

resentation, etc.   *   *   *   then it would not preclude her from prosecuting her action against the Kodak Company."

Exceptions to the charge are as follows (folio 1749): " Mr. Moser: I except to that portion of your Honor's charge in which you charge ' If the release was procured by the exercise of fraud and deceit the release is void.'

" The Court: In reference to a material matter of fact.

" Mr. Moser: My exception is made on the ground that there is no evidence of any return or tender of the money that was paid.

" The Court: Yes."

The court, as can be seen by reading the entire charge did not attempt to explain the difference between " void " and " voidable." He says that if it were fraudulently procured it does not prevent a recovery against the defendant. This was all the judge was called upon to tell the jury. It was not his business to explain the difference in a charge between " void " and " voidable."

The plaintiff made her election in her reply in tendering back the money and she did everything to get it back that the law recognizes. It was proper for the judge, therefore, to say that if there was fraud practiced upon her, she could recover. The matter of tender was a question of law for the court where the facts were not disputed.

What can we say that the plaintiff should have done with Mullen's money? Certainly she was not to give it to the defendant or tender it to the defendant here. Mullen refused to take it and the court has no power over it. Mullen was not in court — not a party.

" Mr. Moser: I ask the Court to charge the jury that if she knew that she was executing a release in consideration of the payment of $300, she cannot recover in this case.

" The Court: Yes, if she knew it and no fraud had entered into it.

" Mr. Moser: I except to the charge as amended and also to the refusal to charge as requested.

" Mr. Moser: I ask your Honor to charge that if she

knew that she was executing a release and that she received $300 in consideration of executing that release, that her cause of action is barred whether or not Mr. McWade made any false representation to her of a material fact, because there is no evidence of a return or tender to Mr. Mullen of the $300 which she received. [Declined and exception.]

"Also to charge the jury that there is no evidence in the case that the $300 that was paid to the plaintiff was ever returned or tendered to Mr. Mullen.

" The Court: Declined, in view of the tender that was made in open court.

" Mr. Moser: Excepted."

In view of what I have just said about tender, I think these requests were properly refused. How could the plaintiff pay the money back to Mullen in Pennsylvania if he would not take it. She wrote to him offering to pay it back and he refused to accept it. Here was a waiver of tender if any other kind of tender could be made. The Kodak Company was not entitled to the money and was not entitled to any tender. If it seeks the benefit of a rule of law that the release of one joint tort feasor releases the other, it must accept all the responsibilities of this gratuitous release and is entitled to no liberal construction or consideration. It paid no money and is seeking the benefit of others' deeds. Mullen has not complained about the failure of any tender. When the plaintiff offered to return the money to Mullen and he refused to accept it, offered in her pleading to pay it back and offered in open court to pay it into court, I cannot see what else the plaintiff could do to preserve her rights as against a third party like the defendant to prevent the effect of a fraudulent release.

Does a release of one joint tort feasor any longer release the other?

This point has not been argued. Section 230 of the Debtor and Creditor Law (Cons. Laws, ch. 12) reads: "A

joint debtor may make a separate composition with his creditor. Such a composition discharges the debtor making it; and him only. The creditor must execute to the compounding debtor a release of the indebtedness or other instrument exonerating him therefrom."

In the third department the Appellate Division has applied this section to joint tort feasors. (*Warner* v. *Brill*, 195 App. Div. 64.) (See Columbia Law Review for May 1921, vol. XXI, No. 5, page 491, note at bottom of page.)

In this case the release mentioned only Mullen and made no reference to the Kodak Company. The defendant relies upon the old law and authorities. (See *Walsh* v. *N. Y. C. & H. R. R. R. Co.*, 204 N. Y. 58, 63, 64.)

I do not go so far as to say that we should hold with the Appellate Division in the above case as the question is not argued or presented by briefs. Counsel assume the old authorities apply. Perhaps they do. *But* those decisions and comments show the trend of thought on this subject and naturally incline us to be liberal to the plaintiff upon this question of tender and of misrepresentation.

The order of the Surrogate's Court permitted a settlement with Mullen, not with the Kodak Company. The rule that a release of one joint debtor releases all does not apply to surrogate's orders. The order is conclusive, if at all, only as to Mullen. But is it conclusive? The authority to settle given by the surrogate is embodied in an order, not a decree. (Code of Civil Procedure, § 2548.) It may be attacked collaterally for fraud. (*Pietraroia* v. *N. J. & H. R. R. & F. Co.*, 197 N. Y. 434; *McCarthy* v. *Supreme Court of Foresters*, 107 App. Div. 185; *Ziemer* v. *Crucible Steel Co.*, 99 App. Div. 169.)

The judgment appealed from should be affirmed, with costs.

Pound, McLaughlin and Andrews, JJ., concur with Hiscock, Ch. J.; Hogan, J., dissents; Crane, J., reads dissenting opinion; Chase, J., deceased.

Judgment reversed, etc.