GEORGE BACKHOUS, Respondent, *v.* ALFRED WAGNER, Appellant.

Negligence — release — action to recover for personal injuries — defense of release for valuable consideration — insufficiency of evidence to satisfy jury that plaintiff did not execute release, did not know its contents or understand its effect.

Plaintiff sought to recover for injuries caused to him as the result of being run down by an automobile owned by defendant. The answer alleged the defense, among others, that the plaintiff for a

valuable consideration had by an instrument in writing released defendant from all claims, demands and causes of action resulting from the alleged accident. Plaintiff upwards of two months after the accident, and after cashing the draft received in settlement, made . an affidavit recognizing the settlement and release, and set out that he ought to have at least one hundred dollars more, giving as a reason therefor that it was on account of the circumstances he was in. Two disinterested witnesses testified to facts clearly indicating that he fully comprehended he was settling and had settled and executed a release in satisfaction of his claim. The release recited valuable consideration. Upon these facts the evidence was insufficient to satisfy a jury that the release was not executed by him or that he did not know its contents or that he did not understand that he had settled all claims against defendant arising out of the accident. (*McNamara v. Eastman Kodak Co.,* 232 N. Y. 18, cited.)

*Backhous* v. *Wagner,* 200 App. Div. 884, reversed.

(Argued December 13, 1922; decided January 9, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 14, 1922, affirming a judgment in favor of plaintiff entered upon a verdict.

*Frederick T. Pierson* for appellant. The judgments and orders appealed from should be reversed and the complaint should be dismissed upon the ground that the claim was settled and compromised and the cause of action paid, released and discharged. (*McNamara* v. *Eastman Kodak Co.,* 232 N. Y. 18; *Wagner* v. *Nat. Life Ins. Co.,* 90 Fed. Rep. 395; *McLaughlin* v. *Syracuse R. T. R. R. Co.,* 115 App. Div. 774; *Upton* v. *Tribilcock,* 91 U. S. 45.) In order to set aside a release in settlement of a disputed claim, upon the ground that the release was signed by the plaintiff when he did not understand the full weight and force of the paper that he was signing, he must before the commencement of his action tender back the money received in accordance with such release. (*McLaughlin* v. *Syracuse R. T. Ry. Co.,* 115 App. Div. 774.)

*Hampton H. Halsey* for respondent. The plaintiff was not required to return the money alleged to have been

paid to him. (*Smith* v. *Ryan*, 191 N. Y. 452; *Cleary* v. *Mun. El. L. Co.*, 139 N. Y. 643; *Herman* v. *FitzGibbons*, 136 App. Div. 288.)

HOGAN, J. The plaintiff in this action sought to recover damages for personal injuries alleged to have been sustained by him on January 30th, 1921, as the result of being run down by an automobile owned by defendant. The issue of negligence of defendant and contributory negligence of plaintiff was presented by the pleadings. The answer affirmatively alleged as a defense that plaintiff for a stated valuable consideration paid by defendant to him, had on February 1st, 1921, by an instrument in writing released defendant from all claims, demands or cause of action resulting from the alleged accident.

Two questions were submitted to the jury: (1) Whether or not defendant is chargeable for the injuries that the plaintiff received; (2) was there a complete release or satisfaction of any claim that the plaintiff may have had against the defendant? The jury found in favor of the plaintiff upon the two questions. Upon appeal the judgment was affirmed by the Appellate Division by a divided court.

We shall refrain from a discussion of the facts in the case bearing upon the negligence of defendant or contributory negligence upon the part of plaintiff, and confine our review of the same only so far as necessary to a discussion of the effect of a general release executed by plaintiff to defendant within two or three days subsequent to the accident.

Immediately after the accident plaintiff was conveyed to a hospital. The physician in attendance described the injuries received by him as a fracture of three ribs on the right side about midway of the side and two ribs on the left side just left of the breast bone and a Colles fracture of the lower end of the right wrist and the

scrotum ruptured. Plaintiff was badly shocked. The witness did not recall that there was any injury about the head. The Colles fracture was reduced and put up in a Bristol grip case. The following morning the nervous condition had pretty well cleared up.

The plaintiff as a witness described the happening of the accident. Upon cross-examination he identified one Nichols as " a man from the insurance " who called on him after he had been in the hospital two or three days, and had a talk with him about the accident. He first denied having signed any paper. A general release was then exhibited to him. He admitted that his name appeared thereon, that he wrote the same but the man led his hand as it was in a plaster cast; that Nichols told him he would pay his hospital bills and all of his expenses and showed him some papers but he did not read them; that Nichols gave the head nurse a check for one hundred fifty dollars ($150) which he afterwards indorsed and received the amount of the same in cash. The check was paid April 9th, 1921. The release was executed February 1st, 1921. Concededly the check was retained at the hospital for plaintiff where the latter remained between two and three months. On redirect examination plaintiff testified that Nichols did not explain to him the contents of the paper he signed or that he was releasing any claim he had, or settling his claim and he did not understand he was settling a claim for injuries received by him for $150.

Mr. Nichols was called as a witness by defendant and testified that he called on plaintiff, told him he was from an insurance company and represented the defendant, talked with plaintiff about the accident and plaintiff asked him who was going to pay his hospital and doctor's bills, to which the witness replied, " Well, if you want to settle the case I will talk with you." Plaintiff replied, " All right," whereupon Nichols said, " I will give you $75 and pay your hospital and doctor's bills until

you are discharged from the hospital." Plaintiff said: " Make that a hundred dollars," to which Nichols replied, " All right," and thereupon drew a release, the consideration stated therein being, bill of doctor, hospital and $100; that the hospital nurse at his request read to plaintiff the release and handed the same to him after which the man in the next cot offered to plaintiff his eye glasses, plaintiff put on the same, read the release and said: " You have only got a hundred dollars in this paper, I thought you said $150." After discussing the matter for a moment Nichols drew another release wherein the consideration was stated $150 and payment of hospital and doctor's bills and is the general release in question; that such new release was also read to plaintiff by the nurse and plaintiff then said, " I thought you said $200." The witness replied, " I did not say $200, you know well enough I only said $150," to which plaintiff replied, " I see you come up fifty dollars once and I thought you would come up again." Thereupon plaintiff signed the release in his presence. Nichols thereupon drew a draft to plaintiff and the nurse placed the draft in an envelope upon which she wrote the name of plaintiff and told him she would leave it in the office safe and he could have the same at any time he wanted it.

About two months later at the request of plaintiff Nichols visited him at the hospital. Plaintiff then said to him: " There was a lawyer to see me today and told me I settled too cheap. I think you ought to give me a hundred dollars more. I don't want to bother with a lawyer unless you don't want to pay me." Nichols replied that he (plaintiff) had settled his case and signed a release, to which plaintiff replied: " I know but I settled too cheap." Nichols then told him: " I cannot pay you any more, if you want to come to our office after you leave the hospital and talk with Mr. Conroy, all right." Plaintiff replied that he would do so. Before

28

plaintiff called to see Mr. Conroy, Nichols drew an affidavit which was received in evidence, same having been signed and sworn to by plaintiff after it had been read to him by one Smith, a patient at the hospital, which affidavit recited the accident, the agreement of settlement made at the hospital on February 1st, the consideration thereof as hereinbefore stated, the signing of a release, delivery of a draft for $150, and further, " at the time I settled the claim I did not realize that I would be unable to work for a few months and I have now concluded that I ought to have at least one hundred dollars more — when I settled my claim I knew that I had signed a release but at that time I thought I was making a fair settlement. It is now on account of the circumstances that I am in, that I desire to obtain at least one hundred dollars more in settlement of my claim."

Plaintiff thereafter called to see Mr. Conroy and in the presence of Nichols asked Mr. Conroy what he was going to do for him. Mr. Conroy told him he admitted he signed a release and he could not see how he could pay him more and showed him the release and plaintiff said that is my name on there but " My lawyer says I ought to have some more money." Mr. Conroy told him he could not pay him more.

The hospital bill paid by the insurer of defendant was $240.50, the doctor's bill $100, the plaintiff received $150.

Miss Moore, a nurse from the hospital, was called as a witness and corroborated the witness Nichols, to the effect that at his request she read the proposed release for $100 to plaintiff and as to the request of plaintiff for $150, the preparation of the second release, that she read the same to plaintiff and signed the same as a witness thereto, the delivery of a draft for $150 to plaintiff and that she took care of same for him, saw him later indorse the draft and identified the draft and indorsement.

The witness further corroborated Nichols as to a man in an adjoining cot loaning to plaintiff his eye glasses to enable the plaintiff to read the release.

A witness, one Smith, a soldier patient at the hospital, who was a witness to the affidavit made by plaintiff, testified that at request of plaintiff he read the contents of the same to plaintiff after asking him if he desired to have him do so to which plaintiff replied in the affirmative. That he, the witness, told plaintiff, " it was very important and he ought to know what was in it and he told me to read it for him so I read the affidavit to him and when I finished I asked if he understood all that was in it and he said he did." Thereupon plaintiff signed the affidavit and stated that he swore to the same and Smith signed the same as a witness.

Mr. Conroy was called as a witness and corroborated the evidence given by Nichols as to the interview in the office of the insurer after plaintiff left the hospital.

Plaintiff, called in rebuttal, denied that he told Conroy he understood the case was settled; that he did not remember that he said to the witnesses Nichols, Smith, Moore, or anybody, that he understood that he had settled his case but was not satisfied with $150. While he saw papers at the hospital he did not know what he signed or was doing when he was lying in bed plastered up. He did not remember Smith reading over a paper to him. Somebody was reading a paper (the affidavit), but he did not remember that it was two days before he left the hospital.

The foregoing is an excerpt of the evidence bearing upon the question under consideration. While the physician who treated him testified that upon his entry into the hospital he was suffering from the effect of shock and stimulants were administered to him, he had practically recovered from the same the following morning, twenty-four hours or more before Nichols visited him.

The draft for $150 delivered to plaintiff recited upon

its face that it was in full settlement of all damage claim against Alfred Wagner (defendant), and as appears stamped thereon was paid April 9th, which was subsequent to the verification of the affidavit made by plaintiff. The cash received thereon by plaintiff was never tendered to defendant, or to the insurer, the drawer of the same. Neither was the sum of $340.50 paid by defendant or insurer for hospital and doctor's bill of plaintiff tendered.

The plaintiff is a die cutter, having learned his trade in Germany. He had been in this country thirty years and so far as appears understood and spoke English, was also able to read and write but in view of the bandages upon his body the papers signed by him were read over to him as stated and no criticism made as to the contents of the same; the evidence also discloses that he read the release himself. This case falls within our recent decision. (*McNamara* v. *Eastman Kodak Co.*, 232 N. Y. 18.)

In addition to the release executed by plaintiff and the affidavit made by him, as well as his act in cashing the draft after retaining the same for upwards of two months, two wholly disinterested witnesses, Moore and Smith, testified to facts clearly indicating that plaintiff fully comprehended that he was settling, and had settled, his claim for damages against defendant and had executed a general release in satisfaction thereof. The release upon its face recites a valuable consideration which was in fact paid. When plaintiff made an affidavit upwards of two months after the accident, the evidence discloses that he comprehended the contents of the same, and was then seeking an additional sum of $100 on account of necessaries. The evidence of such fact was not impaired by his assumed lack of memory in various answers to questions propounded him — " I don't remember."

The evidence in this case was insufficient not only to reasonably satisfy a jury that the release executed by plaintiff was not signed by him, or that he did not know the contents of the release and did not understand that

he had settled any and all claims against defendant arising out of the accident sustained by him.

The judgments below should be reversed and the complaint dismissed, with costs to appellant in all courts.

HISCOCK, Ch. J., CARDOZO, POUND, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment accordingly.