NORA J. TELFORD, Respondent, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

Third Department, March 29, 1928.

**Insurance — life insurance — policies issued February 4, 1924, and insured died December 29, 1924 — policies contained two-year incontestability clause — insured misrepresented medical history — action was commenced after expiration of two years — defense of general release given upon return of premiums — plaintiff could prove without pleading that she signed release in belief that it was receipt — evidence shows no fraud was practiced in procuring release — plaintiff believed she had no rights until she met her present attorney two years after issuance of policies — release is valid and plaintiff has no cause of action.**

This is an action to recover on two life insurance policies in which the plaintiff is named as beneficiary. The policies were issued February 4, 1924, and the insured died December 29, 1924. Both policies contained an incontestability clause which provides that each policy " except for non-payment of premiums, shall be incontestable after two years from the date of its issue." Concededly the insured misrepresented his medical history to such an extent that the insurer could have contested the validity of said policies. This action was not commenced until after the lapse of two years from the date of the issuance of the policies. Shortly after the death of the insured the defendant rejected the policies on the ground of the misrepresentations of the medical history of the insured and offered to return the premiums to the plaintiff. The plaintiff accepted the return of the premiums and signed a release which was presented to her by an agent of the defendant. One of the defenses interposed is that the plaintiff has released her claim against the defendant.

Inasmuch as the plaintiff contends that the alleged release was procured from her upon a misrepresentation that the paper signed was a receipt, she had the right to contest the validity of the release without pleading its invalidity.

The defense of general release was new matter deemed to be controverted by traverse without pleading and the burden of establishing that defense was upon the defendant.

Since the defendant did not contest the validity of the policies within two years after the issuance thereof on the ground of fraudulent representations it is necessary for it to show that a binding general release was executed by the beneficiary. And on the other hand if it is shown that the release was fraudulently obtained the plaintiff may succeed. The evidence shows that there was no fraud on the part of the defendant in procuring the plaintiff to sign the release upon the return of the premiums. It appears that shortly after the death of the insured the policies were rejected on the ground of fraudulent representations as to medical history and at that time the plaintiff believed that she could not recover and that all she could obtain would be a return of the premiums. It also appears that she accepted the premiums in the belief that she was not entitled to anything more. The release signed was plainly written and was marked " Claimant's Receipt and Release." It also further appears that plaintiff did not change her mind until she met her present attorney more than two years after the issuance of the policies and had been advised that the incontestability clause prohibited the defendant from defending on the ground of fraudulent representations. Under all the circumstances the release as executed by the plaintiff is binding upon her.

HILL, J., dissents, with memorandum.

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of Washington on the 19th day of September, 1927, and also from an order entered on the 24th day of September, 1927.

*Martin T. Nachtmann,* for the appellant.

*John J. Finn,* for the respondent.

HINMAN, J. The action was brought to recover the sum of $10,000 upon two policies of insurance, each in the sum of $5,000, issued by the defendant upon the life of one Samuel D. Telford, payable to his wife, the plaintiff. Both policies are dated February 4, 1924, and are absolutely identical in language except as to policy number. The insured died December 29, 1924, which was within the period mentioned in that clause in each of the policies reciting that the policy, " except for non-payment of premiums, shall be incontestable after two years from the date of its issue." Action was not commenced until May 19, 1927, more than two years after the date of the issuance of the policies. The complaint alleged two causes of action for recovery under the policies. The defenses, pleaded separately, were (1) that false and fraudulent representations, made in the application for the policies, vitiated the policies; (2) that plaintiff had executed and delivered a general release under seal on August 31, 1925, in consideration of a return of premiums; and (3) that the acceptance by the plaintiff of the returned premiums and surrender of the policies by her, with full knowledge of the situation, constituted an accord and satisfaction. The plaintiff did not reply to any of the affirmative defenses contained in the answer. The defendant did not obtain

an order directing the plaintiff to reply (Civ. Prac. Act, § 274), nor an order for a separate trial of the issues raised by any of the affirmative defenses (Civ. Prac. Act, § 443). At the trial the plaintiff sought to prove and has obtained a verdict upon the theory that the general release was obtained from her by fraudulently misrepresenting it to be a receipt.

The general rule is that a contract induced by misrepresentation is valid until disaffirmed, that is, it is voidable, not void. To rescind the contract the party defrauded must, ordinarily, act promptly on discovery of the fraud and restore or offer to restore any consideration received thereunder, or seek in equity to rescind, offering in her complaint to restore anything received. (*McNamara v. Eastman Kodak Co.*, 232 N. Y. 18; *Urtz v. N. Y. C. & H. R. R. R. Co.*, 137 App. Div. 404.) Concededly the plaintiff has never made or offered to make restoration of the returned premiums.

There is an exception, however, to this general rule. When the deception induced by misrepresentation relates to the nature of the contract which another is thereby induced to execute and produces such essential error that the persons so tricked and deceived may be said never to have intended to make any contract whatsoever of the nature alleged, the so-called contract is deemed to have been wholly void *ab initio*. In such a case there is no contract to be disaffirmed. It never existed by mutual consent. In such a case rescission is not the remedy. As a contract it is not susceptible of rescission. (*Whipple v. Brown Brothers Co.*, 225 N. Y. 237, and cases cited.)

Plaintiff's theory came within that exception. She claims that she never intended to sign a release but was tricked into doing so because it was called a receipt. On that theory the practice and pleading adopted by the plaintiff was entirely proper. She was not obliged to appeal to a court of equity for relief, but when the release was set up as a defense to her claim under the policies she could avoid it at law by proof of her lack of assent induced by the deceit. The defense of general release was new matter deemed to be controverted by traverse and the burden of establishing such defense rested on the defendant. (Civ. Prac. Act, § 243; *Boxberger v. N. Y., N. H. & H. R. R. Co.*, 237 N. Y. 75; *McNamara v. Eastman Kodak Co.*, 232 id. 18.)

The main question is whether we can say as matter of law upon undisputed and conceded facts that there was a valid release or an accord and satisfaction and so intended by the plaintiff. The defendant moved for a directed verdict which was denied and the defendant excepted. The issue of fraud was submitted to the

jury, who found for the plaintiff. The defendant moved to set the verdict aside and for a new trial on the usual grounds, which was denied. The defendant appeals from both the judgment entered upon the verdict and the order denying its motion for a new trial.

What are the undisputed or conceded facts? Samuel D. Telford obtained from the defendant the issuance of the two policies in question upon his life, dated February 4, 1924, and payable to the plaintiff whom he had married November 7, 1923. In his application for the policies he made representations (1) that he had never suffered from any ailment or disease of the lungs; (2) that he had never been an inmate of or received treatment at any asylum, hospital, sanatorium or cure, except that he had tonsils removed at the Troy Hospital in December, 1922; (3) that he had never changed his residence for his health, and (4) that he had not consulted or been treated by a physician or physicians not named in said application within the last five years. Upon the trial plaintiff conceded that if certain doctors were sworn they would testify as follows: " Dr. J. J. Rainey of 104 Second Street, Troy, New York, would say that he was consulted by and treated the insured in December, 1922; that Dr. R. H. Irish of 507 Broadway, Troy, New York, would say that he was consulted by and treated the insured for some time beginning January 11th, 1921; that Dr. Merrill J. King would testify that the insured was treated at the New York State Hospital from February, 1921, until May, 1921; that the physicians aforesaid were duly authorized to practice medicine under the laws of the State of New York and were in good standing at the times referred to; that the relation of physician and patient existed between them, and that the said Samuel D. Telford at the time was sick." The New York State Hospital is known as Raybrook Sanitarium and is a hospital for tubercular patients. Samuel D. Telford died of pulmonary tuberculosis on December 29, 1924.

It would seem that the insured had made materially false and fraudulent representations which he warranted to be true in his application for the policies and which rendered the policies uncollectible if contested on that ground within two years after the date of issuance. (*Travelers Insurance Co.* v. *Pomerantz,* 246 N. Y. 63; *Stanulevich* v. *St. Lawrence Life Association,* 228 id. 586; *Baumann* v. *Preferred Accident Ins. Co.,* 225 id. 480; *Patten* v. *U. L. & A. Ins. Assn.,* 133 id. 450.) The appellant failed to contest the matter in court during the two-year period for the reason that the plaintiff, having been informed that her policy claims had been rejected on account of breach of warranty, accepted

the return of the premiums, signed the release in question and surrendered the policies about September 1, 1925. The contestability period expired in February, 1926. The respondent admitted on the trial that she believed that nothing could be collected on the policies when she accepted the return of the premiums and surrendered the policies, and that she continued to believe it until she met her present attorney in April, 1927, at which time this action was started. The fair inference from the record is that she was advised that the defense of breach of warranty as to health and prior medical attendance and treatment was no longer available to the appellant, since the two-year period for contestability had run and the appellant had not made a contest during that period within the meaning of the incontestability clause of the policies, namely, by a law suit. Her counsel in his brief cites as authority for that conclusion *Travelers Ins. Co.* v. *Snydecker* (127 Misc. 66); *Parton* v. *Metropolitan Life Ins. Co.* (129 id. 493); *Northwestern Mutual Life Ins. Co.* v. *Pickering* (293 Fed. 496; certiorari denied, 263 U. S. 720). We may assume that the contest contemplated by the incontestability clause is a suit, but if there was a valid release or an accord and satisfaction there was no necessity for a contest. The parties had a right to agree upon a settlement. It, therefore, became essential to a recovery by the respondent that the embarrassment of the release be obviated by attacking its validity. If fraudulently obtained from her, the appellant would be compelled to accept the results of its deceit in now being unable to plead the fraud perpetrated upon it by the insured.

The issue thus created was: Did the release fairly represent the intention of the respondent at the time? Was she induced by deceit to sign a paper which was entirely different from the one she was asked and expected to sign? Was there a complete accord and satisfaction?

We think she understood that she was about to make a final disposition of her claims and that she was receiving in full settlement the return of the premiums. Upon the conceded facts it seems clear that the policies had been vitiated by fraudulent representations of her husband. In March, 1925, she had been informed by the company that her claims were being investigated owing to the fact that at the time application was made Mr. Telford failed to disclose previous medical treatment and his confinement and treatment at Raybrook Sanitarium. In June, 1925, having been informed that the company had definitely rejected her claims, she wrote: " Inasmuch as the Company has rejected the death claim for Samuel D. Telford, Policies # 3869939-A and 3869940-A, I would like the original policies to be returned to me for investi-

gation. Will you kindly send them to me immediately? " She testified that Mr. Stewart, the company's local agent, brought the policies to her some time in June, 1925, and told her that both policies were void and nothing could be collected upon them on account of Mr. Telford's misrepresentations and there was nothing for her to do except to take the premiums back. She says she believed it. She knew that Raybrook Sanitarium was a hospital for treatment of tubercular people and that the insured had been there. She was not misled by the representative of the company when he told her she could not recover because of the misrepresentations in question and when he offered to return the premiums. She says she did not consult any lawyers about the case but she did take the policies to the Insurance Department at Albany and asked them. Just when she did that does not appear but she admits that she believed the policies were uncollectible until she met her present attorney in April, 1927. She was not deceived in that respect because it is quite apparent that Stewart stated the facts truthfully and the law faithfully at the time. Believing it she undoubtedly expected to make a final adjustment of the matter when, on August 31, 1925, Stewart came to her with a paper for her to sign. She says, in substance, that he told her it was a " receipt " for the return of the premiums which the company had to have " to complete their record of the case; " that Stewart handed the paper to her on a book which he held in his hand; that he held the paper by the upper left-hand corner, the book being under it; that she signed it; and that he took it away with him. The paper was the general release in question and recited as the consideration the sum representing the amount of the premiums. It was marked on the left-hand side in large letters, " Claimant's Receipt and Release." Her counsel would have us infer perhaps that the word " release " was covered by Stewart when he held the paper by the upper left-hand corner but there is no such proof. Our examination of the paper fails to disclose that such was necessarily or probably the fact. She does not say that she did not read the paper. It was short and printed in easily readable type. She was an educated young woman who had graduated from High School, had attended two summer sessions at the Oneonta Normal School for teachers and had taught school for several years. She admits that she surrendered the policies by leaving them at Stewart's house and that on September 30, 1925, she received a check from the company for the return of premiums. This check recited on its face language clearly indicating the rejection of her policies. She held the check until October 14, 1925, when she deposited it and received the proceeds.

It never occurred to her to doubt the validity of this settlement until a year and a half later when by accident she apparently learned, not that she had been defrauded, but that through the passage of time she might take advantage of a different situation never before contemplated by her.

One must be credulous indeed to believe that she was induced by deceit to sign a paper entirely different from anything she expected to sign. There were no suspicious circumstances. She believed the policies were void and she was apparently justified in so believing. She believed that all she could ever do was to accept the offer of the return of the premiums. That was a fair offer under the apparent circumstances. She had no idea that she had or ever could have a right of action to enforce payment of the policies. There was no duty to disclose to her that the company was required to contest the validity of the policies within the two years prescribed in the incontestability clause or to disclose to her any possibility that unless she signed a general release instead of a receipt, she could take the money, keep silence for the balance of the two-year period and then sue the company on the policies, if indeed Stewart ever thought of such a likelihood. How then can it be said that any deceit was practiced upon her to her damage? There was no occasion for Stewart to intend to defraud her by calling it a receipt and we do not see how a jury can be permitted to say that she was thereby defrauded. She admits that she was told the paper was to " complete " the company's records of the case. Being an intelligent woman she knew what that meant. It undoubtedly meant to her that it was the company's record of her acquiescence in the conclusion that the policies were uncollectible and her admission that the repayment of the premiums was a fair and complete adjustment of the controversy. The surrender of the policies after she had been convinced of their invalidity indicates that she retained no purpose to sue on them. She also confirmed this mental attitude when she cashed the check later, which indicated on its face to one of her intelligence that she had not received a gratuity but that the return of the premiums meant the rejection of her claims and that she was making a final settlement. (*Mc Namara* v. *Eastman Kodak Co.*, 232 N. Y. 18, 22.) She was not led into any mistake and no fraud was practiced or resulted. At least none was proven and the jury should not have been permitted to say that there was not a valid general release, or that there was not a complete accord and satisfaction when she cashed the check and surrendered the policies. " Where a claim is unliquidated or in dispute, payment and acceptance of a less sum than claimed, in satisfaction, operates

as an accord and satisfaction, in the absence of fraud, artifice, mistake, or imposition." (1 C. J. 551.) The material facts presented at the trial were undisputed. The motion for a directed verdict should have been granted.

The judgment and order should be reversed on the law, with costs, and complaint dismissed, with costs.

VAN KIRK, P. J., DAVIS and WHITMYER, JJ., concur; HILL, J., dissents, with a memorandum.

HILL, J. (dissenting). Plaintiff was told that the paper presented for her signature was " simply a receipt for the premiums " and " simply a matter of form." It was in fact a general release. If this contract or release was obtained by fraud, plaintiff was entitled to be relieved. (*Boxberger* v. *N. Y., N. H. & H. R. R. Co.*, 237 N. Y. 75.)

The majority of the court determine that the circumstances shown so militate against plaintiff's contention that she was deceived that there was no question of fact for the jury to decide. I do not agree.

Judgment and order reversed on the law, with costs, and the complaint dismissed, with costs.