IRVING J. THORNE, Plaintiff, *v.* COLUMBIA CAB CORPORATION and HAROLD D. BRICKMAN, Defendants. *

City Court of New York, Trial Term, Bronx County, April 1, 1938.

* Revd., —— Misc. ——.

*William J. Hampton, Jr.* [*Victor D. Borst, Jr.*, of counsel], for the plaintiff.

*Irving I. Levinson* [*Walter F. Doyle* of counsel], for the defendants.

ADLERMAN, J. Plaintiff, an interne at Harlem Hospital, was injured on September 17, 1936, while riding in rear of an ambulance, which came in collision with the defendants' taxicab at One Hundred and Thirty-seventh street between Fifth and Lenox avenues. He was thrown against the side of the ambulance and his head hit the steel shelf on the side opposite where he was sitting. He continued to do his normal work for a couple of hours, going out on three calls, but at eight-thirty A. M. was unable to eat his usual breakfast and was advised by another doctor to go to his room which was located in the internes' quarters in the hospital premises.

At about ten-thirty or eleven A. M. of the same day an adjuster from Citizens Casualty Company of New York, representing defendant (Columbia Cab Corporation), entered the plaintiff's room and a release was obtained from the plaintiff, leaving a check for thirty-five dollars, while plaintiff was in such mental and physical condition as to be unable to understand the meaning of the transaction. The defendants have set up this release as a defense

to this action. Plaintiff claims that he does not remember anything that transpired that day, and does not remember the presence of the adjuster, or having signed a release. Dr. Crater, a fellow interne, testified that about fifteen minutes before the adjuster arrived, he entered the plaintiff's room and tried to engage the plaintiff in conversation and found the plaintiff to be incoherent in his remarks. Plaintiff showed all the symptoms of a concussion of the brain, and testified that he was dazed two or three minutes after the accident and shortly thereafter suffered from headaches, dizziness and nausea and that he vomited, and that his mental condition was such that he was not aware of what was going on around him for some time. Dr. Gottlieb, an expert, called by the plaintiff, testified that the plaintiff sustained an injury to his brainstem and cerrebellum; that there was a bilateral drop in hearing; that he had paresis of the external and internal ocular recti muscles, and other injuries arising out of a concussion of the brain; that at one time during his illness he showed evidence of injury to the upper portion of the spinal cord. Examination of plaintiff showed that there was an intracranial injury. Dr. Gottlieb testified that while the plaintiff may accommodate himself in relation to these defects, the injuries are permanent and under stress will become manifest.

Plaintiff was confined to the hospital from September 17, 1936, to October 12, 1936, when he was discharged.

This release was obtained a few hours after the accident, while the plaintiff was in the hospital, and the rule of law with regard to releases obtained in this manner is admirably stated (48 A. L. R. pp. 1515 to 1518):

" It would seem that the time when the release was executed may have an important bearing upon the present question, in connection with other circumstances, as tending to show fraud, mutual mistake, or the absence thereof. Thus, if the release is executed long after the accident, the parties may perhaps more plausibly be regarded as having taken their chance on future developments, and as intending a final settlement; whereas, if the release is executed hastily, on solicitation by the releasee, immediately after the accident, this may, with other circumstances, apparently be treated as an indication of fraud or undue influence; and, furthermore, under the latter conditions, the parties may more plausibly be regarded as intending to settle only for the injuries known at that time, and not for all injuries which may possibly arise from the accident. The factor of time is stated in connection with the various cases, as it has not generally received separate consideration as an element determinative of the present question.

" It seems, also, that the amount of the consideration for the release is an important element in determining whether there has been fraud or mistake. A grossly inadequate consideration may tend to show fraud, or at least the belief of the parties with respect to the nature of the injuries about which they were contracting. This is, however, only one element in the various cases, and not usually the controlling one. For this reason, and the further reason that there is little judicial discussion of the matter as a distinct point, the amount of compensation which the releasor received has been indicated, generally, in connection with the statement of the other facts of the cases."

Plaintiff claims that the purported settlement was made at a time when he was incompetent to sign and comprehend the same, unaware of any act or acts done to or by him, and that he was unaware of the seriousness of his injuries, and the plaintiff's physicians could not tell of the seriousness of the injuries, having had to wait until he became conscious in order to make proper diagnosis. Plaintiff's physicians testified that, in their opinion, the plaintiff's condition was such that he would not be aware of what was going on around him, or of his acts at the time the defendant alleges the release was obtained. It may be noted that the defendants' adjuster stated that the only injuries which he believed the plaintiff sustained was an injury to the thumb. If that be so, it may well be concluded that the release was executed as the result of a mutual mistake of fact. In *Harvey* v. *Georgia* (148 Misc. 633) the defendant set up the affirmative defense of release. In that case there was a three-inch laceration of the scalp. Plaintiff received settlement for $250 and then gave a general release. Subsequently, the plaintiff developed epilepsy, and sued the defendant for his injuries, claiming that the release did not bar his recovery, because " the injury causing that condition was unknown at the time of the settlement, and the release was given in ignorance thereof, and, therefore, under mutual mistake of fact." The court said: " It is apparent that they [courts] all distinguish between cases where the release is executed under a mistake as to the future developments or effect of the injury or injuries, and cases where unknown injuries exist at the time of the settlement, which were not taken into consideration by the parties."

In the case of *Dominicus* v. *United States Casualty Co.* (132 App. Div. 553) there was a payment of $500 and a release signed. The injury was assumed to be only temporary; later there was an amputation, due to conditions existing in plaintiff's arms, and which neither party knew at the time the release was signed. It was held that the mistake was a mutual mistake of fact, and which would entitle plaintiff to rescind the release.

In *Landau* v. *Hertz-Drivurself Stations, Inc.* (237 App. Div. 141) it was said: " The release was of no effect in view of the fact that it was given the day following the accident and at a time when all concerned believed plaintiff's injuries were superficial, whereas it developed that he was suffering from a serious fracture of the pelvis, resulting in total incapacity for months and a weakness at the time of trial, more than two and one-half years after the accident. Having been given under a mutual mistake of fact, the release had no binding effect as to the party to which it was given."

The evidence discloses that the check for thirty-five dollars alleged to have been given in settlement in the case at bar was never cashed, and subsequently returned to the defendant, and accepted without complaint. The plaintiff when told of the settlement on the day of the accident expressed disapproval and was very much displeased, and thereafter a complaint was made to the district attorney that the release was obtained in violation of section 270-b of the Penal Law, which provides that it is unlawful for any person to enter a hospital to obtain settlement or release for personal injuries within fifteen days after the injuries were sustained. The procurement of a release under such circumstances does not render a release void. (*Moses* v. *Carver*, 164 Misc. 204.) The section does not provide that a release or statement obtained in violation of its provisions is void or unavailing for use. Section 270-e of the Penal Law provides that any person violating the provisions of section 270-b shall be guilty of a misdemeanor. The person who violates the section is subject to prosecution and punishment. The Legislature has not, however, declared the instrument so procured to be void. (See, also, same principle in *Smith* v. *Woodworth*, 142 Misc. 889; affd., 236 App. Div. 753.)

The court, however, may take into consideration this violation of the Penal Law, in connection with all the other circumstances under which the said release was obtained, as establishing improper conduct on the part of the adjuster.

The district attorney started an investigation and plaintiff saw the release while in possession of the district attorney during the investigation. The adjuster admitted on the witness stand that he saw this check of thirty-five dollars allegedly given in settlement in the district attorney's office within that very week. Thereafter, and about the first of the year, the check was offered to the defendants but refused and on the 31st of March, 1937, it was mailed to the attorney for the defendant and accepted. The release is relied upon by the defendants as an affirmative defense. It is alleged such release is a complete bar to recovery. The burden of proof rests on the defendant. (*McNamara* v. *Eastman Kodak Co.*, 232

N. Y. 18; *Boxberger* v. *New York, N. H. & Harlem R. R. Co.*, 237 id. 75; *Telford* v. *Metropolitan Life Ins. Co.*, 223 App. Div. 175.)

The courts have held that in this type of case the return of money paid is not a condition precedent to the plaintiff's right to sue for his injuries. (See *Scully* v. *Brooklyn Heights R. R. Co.*, 155 App. Div. 382; *Yaple* v. *New York & O. W. Railway Co.*, 57 id. 265.)

In the case of *Herman* v. *Fitzgibbons Boiler Co.* (136 App. Div. 286) the court held that where the fraud in securing the release of plaintiff's claim was in getting him to execute the same in ignorance of its contents, and not in obtaining his assent to the settlement, he is not required to return the consideration received before contesting its validity.

The defendants have failed to sustain the burden of proof of their defense, that the general release executed by the plaintiff was binding upon him; I hold that it does not release his claim. I find as a fact that the general release was obtained from him when he was not conscious and aware of his acts.

Upon the issue of negligence the evidence establishes that the defendants were negligent and plaintiff was free from contributory negligence and judgment is rendered in favor of plaintiff in the sum of $3,000.

Ten days' stay of execution and thirty days to make a case.