GRACE L. HARVEY, by ELINORA K. HARVEY, Her Guardian ad Litem, Plaintiff, *v.* KENNETH GEORGIA and Another, Defendants.

Supreme Court, Tompkins County, August 9, 1933.

*Cobb, Cobb & Simpson,* for the plaintiff.

*Lee, Levene, Verreau & McAvoy,* for the defendants.

PERSONIUS, J.   This is an action to recover damages for personal injuries received June 27, 1930, when the plaintiff came in contact with an automobile owned by the defendant Kenneth Georgia, and operated by the defendant Dorothy L. Georgia.   The defendants deny liability and set up, as an affirmative defense, a release given by the plaintiff through her general guardian.

The issues as to negligence, contributory negligence and damages were tried with a jury.   It rendered a verdict of $5,000 for the plaintiff.

The issue raised by the affirmative defense of release and the reply thereto was by stipulation tried by the court at the same time and is now to be decided.

In the accident the plaintiff received a three-inch laceration of the scalp above the left ear and some abrasions.   She recovered from these injuries.   Settlement therefor was made through her father as general guardian.   The defendants paid him $250.   He gave a general release pursuant to an order of the Surrogate's Court.

Very soon thereafter she developed a serious case of epilepsy and became totally disabled.

The defendants contend that the release bars further recovery. The plaintiff contends that it does not bar recovery for the epileptic

condition *because the injury causing that condition was unknown at the time of the settlement* and the release given in ignorance thereof and, therefore, under mutual mistake of fact.

We think the defendants fairly state the law applicable as follows: "In spite of the confusion among cases, it is apparent that they all distinguish between cases where the release is executed under a *mistake as to the future developments or effect of the injury or injuries and cases where unknown injuries exist at the time of the settlement which were not taken into consideration by the parties.*" (Italics ours.) (*Landau* v. *Hertz Drivurself Stations, Inc.*, 237 App. Div. 141, 145; *Dominicis* v. *United States Casualty Co.*, 132 id. 553; *Lumley* v. *Wabash R. Co.*, 76 Fed. 66; *Kirchner* v. *New Home, etc., Co.*, 135 N. Y. 182, 189.)

It is important, therefore, to determine whether the plaintiff at the time the release was given had sustained an injury, the existence of which was unknown. We think she had and that this unknown injury caused the epilepsy. When the release was given, the plaintiff and her representatives knew that she had sustained a scalp laceration on the *exterior* of her skull. They did not know that there was any injury to the brain tissue or lining *within* the skull. We believe and hold that there were these two distinct injuries. Dr. Gutsell testified in substance that in his opinion the plaintiff received an injury which produced hemorrhages in the brain or in the membrane covering the brain and that this injury resulted in epilepsy. In reaching this conclusion, the witness gave consideration to the history of the case, including the condition of the plaintiff prior to and subsequent to the accident. To a layman it would appear that in a case of this nature, the history of the patient was entitled to weight. No physician could demonstrate by sight, feeling, X-ray and the like such an injury to the brain. The disease (epilepsy) is evidenced ultimately by falling, shaking, convulsions, etc. None of these symptoms appeared prior to the settlement. Naturally, therefore, none of the parties knew or could know of this condition at the time of the settlement.

The defendants' medical witnesses could point to no other cause of the plaintiff's condition. In brief they stated that the cause is unknown, still they were willing to express an opinion that the accident was not the cause, though admitting that head injuries do cause epilepsy.

The defendants ignore any distinction between the laceration of the tissue outside of the skull and damage to the brain tissue within. The former was known; the latter was not. We think the release was given under mutual, though honest, mistake as to the existence of the latter injury and in ignorance thereof.

The defendants constantly refer to " one blow " on the head, but one blow may produce more than one injury. We are interested, not in the number of blows, but in the number of injuries. True, the laceration or injury on the exterior of the skull and the injury to the brain within were in close proximity, but this is not the controlling fact. In *Landau* v. *Hertz Drivurself Stations, Inc.* (*supra*) the parties knew that the plaintiff had bruises and abrasions on the lower part of his body. The unknown injuries were fractures of the pelvis within this region.

The defendants rely largely on *Miles* v. *New York Central Railroad Co.* (195 App. Div. 748). The case is quite closely analogous. However, it was considered as falling in the class of cases previously mentioned, *where a release was given under a mistake as to the future development or effect of a known injury.* There was but one injury. At least the case was so treated by the eminent jurist who wrote the opinion on which the Appellate Division affirmed. Speaking of mutual mistake of fact he said: " It can mean but one thing in this case, viz., that plaintiff's intestate did not anticipate that the injuries he received would cause the *development* of spinal meningitis and that his death would follow as a result," and again: " The only facts existing at that time the plaintiff's intestate *knew*." (Italics ours.) It will be noted also that the authority there relied on (*Chicago & N. W. Ry. Co.* v. *Wilcox*, 116 Fed. 913) was of the same class. There was one known injury — a broken hip. The Federal court said: " The only material facts which conditioned the contract of compromise were the injury which the complainant had received and the acts of the railway company which caused it. *These the complainant knew as well on the day she signed the release as she has ever known them.*" (Italics ours.) Not so in the present case. What the plaintiff here knew was that she had a laceration on the exterior of the skull. What she did not know was that she had an injury to the brain and it was that injury that resulted in epilepsy.

It is of interest to note that in the case of *Miles* v. *N. Y. C. R. R. Co.* (*supra*) neither the Special Term nor the Appellate Division dismissed the complaint. Each granted a new trial.

Stress is laid on the fact that the settlement was made following an order of the surrogate. Does this order do anything more than to place the plaintiff in the position of an adult signing a release? The only purpose of the appointment of the guardian and of obtaining the surrogate's order was to overcome the disability of infancy. Can an infant who gives a release through her general guardian pursuant to an order of the surrogate be in any position different from that had she been a competent adult and voluntarily given

the release? We think not. As we have seen, if an adult gives a release under a mutual mistake of fact, in ignorance of the existence of certain injuries, the release does not cover the unknown injuries. Inasmuch as the payment of $250 was not brought to the attention of the jury, we think that amount should be credited upon the jury's verdict.

Pursuant to the stipulation, the court has made findings of fact on the issue tried before it without a jury and directs a judgment in accordance with the verdict and the court's findings in the sum of $4,750.

The defendants' motion at the close of the evidence for a dismissal of the complaint and a nonsuit, upon which decision was reserved, is denied with exception to the defendants.

The defendants' motion to set aside the verdict of the jury and for a new trial, made June 29, 1932, upon which decision was also reserved, is denied with exception to the defendants.

This decision is made and is to be filed *nunc pro tunc* as of the date of the submission of the issue, to wit, June 3, 1932.