BERTHA MOSES, Plaintiff, *v.* BENJAMIN F. CARVER, Defendant.

Supreme Court, Trial and Special Term, Broome County, July 19, 1937.

*Lee, Levene, O'Brien & Kramer,* for the plaintiff.

*Keenan, Brink & Harrison,* for the defendant.

McNaught, J.   On the 4th day of June, 1936, the plaintiff was riding as a passenger in a motor vehicle owned and operated by her son, Ralph Moses.   The car was proceeding in an easterly direction on Main street in the city of Binghamton.   At the intersection of Main and Schiller streets, the defendant, proceeding in a westerly direction, made a left turn into Schiller street.   The cars came in contact.   The plaintiff, as a result of the impact, was thrown forward, struck her chest upon part of the car, and sustained lacerations and contusions.   She was taken to the Binghamton City Hospital, suffered pain across her chest, in her legs and head, two days later was taken in an ambulance to the train and returned to her home in New York, where she was three weeks in bed, then sent to Long Island by her physician, where she was in and out of bed, took sun baths, claims to have felt pressure on her chest, had sweats at night, a cough, and some hoarseness.   As a result of the injuries plaintiff claims a reactivation of a tubercular condition.

The jury rendered a verdict of $3,000 in favor of the plaintiff. The evidence was ample to support a finding of negligence on the part of the defendant.

Upon the issue as to the injuries causing a reactivation of a tubercular condition, there was a spirited controversy throughout the trial. It appeared that sometime in 1925 the plaintiff was injured while a passenger on a subway train of the Interborough Rapid Transit Company in the city of New York; that an action was brought to recover damages for injuries sustained at that time, the plaintiff claiming that the injuries had caused a development of active pulmonary tuberculosis; that prior to the trial of the action, and from July, 1927, to September, 1929, the plaintiff was a patient in sanitoriums in the State of North Carolina; and that she returned home on September 7, 1929, having been discharged as cured with an arrested case of tuberculosis. Proof on the part of the plaintiff was to the effect that after her return she had had no difficulty and her health had been good. The proof on the part of the defendant was directed to establishing that the plaintiff did not have at the time of the trial a condition of reactivated tuberculosis; that the impact could not have caused a reactivation, and sought to draw an inference from the testimony of the similarity of the claims unfavorable to plaintiff's contention. This issue was fully tried; much testimony was taken, and the subject fully discussed by counsel in summation. The evidence was contradictory, but the verdict of the jury is not against the weight of the testimony, and is amply supported by evidence.

The defendant in his answer to the amended complaint alleged that on or about the 5th day of June, 1936, the plaintiff and her husband and agent, Eugene Moses, individually, and as husband and wife, for a valuable consideration, released the defendant from the alleged cause of action upon which recovery was sought. It was alleged that there was executed and delivered an instrument or release which was made a part of the answer. The answer further alleged that after the alleged cause of action arose the plaintiff and her husband and agent made an agreement of compromise and settlement with the defendant, and that there was delivered and accepted by plaintiff a check payable to the order of plaintiff and her husband in the sum of $200.70, in full accord, satisfaction and discharge of such cause of action.

The plaintiff served a reply to such affirmative defense, in which she alleged in substance, *first*, that she was, while suffering from great pain and in a highly nervous condition, with her mind in a dull and stuporous condition, induced by misrepresentation to sign the alleged release, the nature and contents of which were

not explained to her; that thereafter she learned she had signed an instrument purporting to release the defendant from all claims which she then or ever had against the defendant, and that upon discovery of the nature of the instrument she immediately repudiated the same and offered to return and restore to the defendant the aforesaid check, which was refused; that the check had never been cashed and was tendered; that by reason of such facts and circumstances the purported release was null and void and of no effect whatsoever; *second*, that the paper purporting to be a general release was obtained from the plaintiff in violation of the provisions of section 270-b of the Penal Law of the State of New York, while she was confined in a hospital as a patient, within less than fifteen days after the injuries were sustained, and without at least five days' notice of consent to give such release; that by reason of the violation of said section the alleged release and purported settlement was invalid and void; *third*, that the purported settlement was made and the release executed under a mutual mistake of fact when both plaintiff and defendant believed that the injuries suffered by the plaintiff were of a slight, superficial and temporary character; that in fact the injuries were not slight, but severe, serious and permanent; that both parties were wholly ignorant of such conditions at the time of the execution of the release, and it was given under a mutual mistake of fact.

The issues as to negligence and the extent of the injuries were tried with a jury and their verdict rendered thereon. The issues relative to the release were tried before the court after the submission of the case to the jury, and are submitted to the court for its determination.

A review of the salient facts is essential for a full consideration of the issues relative to the release.

Immediately after the accident the plaintiff was taken to the Binghamton City Hospital, where she was attended by Dr. Snierson. The son, Ralph Moses, owner of one of the cars involved in the accident, and the husband of plaintiff ascertained from the defendant the name of his insurer. Upon seeing the agent they were referred to the counsel appearing herein for the defendant. They, together with the defendant, went to the office of the attorneys, and there interviewed Mr. Dolan, an attorney associated with such firm. Mr. Dolan told them that he would immediately investigate the matter. He did so, going to the scene of the accident, interviewing witnesses, talking with the defendant, and procuring the services of a commercial photographer to take photographs of the vicinity. This occurred within two hours or less after the accident. Mr. Dolan communicated with the home office of the

insurer, advising them that in his opinion it was a case of liability. The extent of the damage to the car of Ralph Moses had been ascertained. An estimate of the cost of repairing it had been procured, amounting to some $130. Mr. Dolan was authorized to settle for the out of pocket expense or out of pocket loss. Mr. Dolan advised the husband and son to this effect, but stated to them that it would be necessary that all claims which might arise out of the accident be settled, and that he would require an examination of the plaintiff herein. Some discussion ensued. Dr. Snierson was consulted and stated there was no reason why the examination should not be made, and Dr. Griffin examined the plaintiff on the afternoon of June fifth. Mr. Dolan desired an X-ray, which was taken, but not until after the transactions out of which the controversy arises were fully completed, the X-ray being taken on June sixth before the plaintiff left the hospital.

On the morning of June fifth the husband, Eugene, and the son, Ralph, went to the office of defendant's attorneys and again saw Mr. Dolan. He told them that he had talked with Dr. Griffin; that he was advised by him that the plaintiff had bruises of her chest, some lacerations; that there was an old TB condition, and that Dr. Griffin had said there might be a possibility of an aggravation of that condition, but that he thought it improbable there would be any aggravation; that they first took up Ralph's claim for damages to the car, the expenses and loss of use; that this was adjusted at $132.25. They then proceeded to discuss and figure the hospital expenses, doctors' bills, hotel and living expenses, railroad fare, lost time, and an item for an examination after returning to New York, by Dr. Orenstein, who had formerly examined and treated the plaintiff. These items aggregated $123.70. There was then some discussion, according to the testimony on the part of the defendant, to the effect that Mrs. Moses should be compensated, and Mr. Dolan advised them that he was only authorized to pay expenses, but finally agreed to add $77, making the total amount $200.70. Checks were drawn and releases prepared. Mr. Dolan stated that the checks could not be delivered until the releases were signed by all of them, whereupon the release of Ralph Moses was signed by him, and the release to be signed by this plaintiff and her husband Eugene was taken by Eugene for execution. The release was taken to the hospital; the son sought to obtain witnesses; the husband went to the room occupied by the plaintiff, and their testimony is to the effect that he advised her it would be necessary to sign the paper for Ralph to get his car repaired and his expenses, and for them to get their expenses caused by the accident, whereupon the plaintiff signed the paper. The

husband and son subsequently returned to the offices of the attorneys; the releases were delivered; the checks were taken by the son and by Eugene Moses; the son's check was first cashed and he left on the two o'clock train. Late the same afternoon the husband went to the hospital and told the plaintiff the check would have to be indorsed by her, and she signed her name upon the back of the check. It does not appear there was any discussion at that time. The plaintiff claims that up to this time she did not know, had not been told, and did not understand, that she was releasing any claim on her part for personal injuries. She says that she thought of the matter in the night, and the next morning early told the nurse to telephone to her husband not to cash the check, and that she wanted to see him. The husband later came to the hospital and assisted in preparing the plaintiff for return to New York, and she claims that then for the first time she realized that the release purported to acknowledge having received full satisfaction for any and all claims that she had or might have. She advised her husband she would not accept such an adjustment, and that when they returned to New York she would consult Mr. Frankel, who was their attorney and a personal friend. The plaintiff was then taken to the train in an ambulance, carried into a drawing room and returned to her home in New York. The plaintiff consulted Mr. Frankel, and on June twelfth Mr. Frankel came to Binghamton and tendered the check which had been issued under date of June 5, 1936, in behalf of the insurer. The attorneys refused to accept the check. On June fifteenth Mr. Frankel, in behalf of Mr. and Mrs. Moses, wrote a letter to the attorneys for the insurer and returned the check, requesting the return of the release. The request was refused and the check was returned to Mr. Frankel. The check was produced in court, tendered, and paid into court by delivery to the clerk.

The defendant contends that the release bars recovery herein.

The plaintiff contends that the release is void, does not bar recovery, and plaintiff is entitled to a cancellation thereof.

The release purports to discharge the defendant from liability for all claims which " we have or might have against him or them, and especially because of all damages, losses or injuries to person or property, or both, whether developed or undeveloped, resulting or to result from accident." It further contains a paragraph which in substance purports to set forth that the parties have " represented that the injuries sustained are permanent and progressive and that recovery therefrom is uncertain and indefinite * * * we rely wholly upon our own judgment, belief and

knowledge of the nature, extent and duration of said injuries." The instrument is designed to cover not only future developments or effects of the injury, but unknown injuries existing at the time which were not taken into consideration. The language of the release plainly seeks to avoid the confusion in the cases as to coverage of future developments of a known injury, and the existence or development of unknown injuries. The instrument is clearly designed to obviate the decision in *Harvey* v. *Georgia* (148 Misc. 633).

The release is relied upon by the defendant as an affirmative defense. It is alleged such release is a complete bar to recovery. The burden of proof rests on the defendant. (*McNamara* v. *Eastman Kodak Co.*, 232 N. Y. 18; *Boxberger* v. *New York, N. H. & H. R. R. Co.*, 237 id. 75; *Telford* v. *Metropolitan Life Insurance Co.*, 223 App. Div. 175.)

Considering first the claim that the release was procured in violation of the provisions of section 270-b of the Penal Law, we are of the opinion that such violation in and of itself will not avoid the release. Section 270-b provides in substance that it is unlawful for any person to enter a hospital for the purpose of negotiating a settlement or obtaining a general release or statement, written or oral, from any person confined therein with reference to any personal injuries, within fifteen days after the injuries were sustained, unless at least five days prior thereto the injured party has signified in writing willingness that such general release or statement be given. The section does not provide that a release or statement obtained in violation of its provisions is void or unavailing for use. Section 270-e of the Penal Law provides that any person violating the provisions of section 270-b shall be guilty of a misdemeanor. The person who violates the section is subject to prosecution and punishment. The Legislature has not, however, declared the instrument so procured to be void. (See, also, same principle in *Smith* v. *Woodworth*, 142 Misc. 889; affd., 236 App. Div. 753.)

The contention of the plaintiff that the release was executed, both parties believing at the time of its execution that the injuries suffered by the plaintiff were slight, superficial and temporary in character, and that the parties were ignorant of and did not take into consideration the reactivated tuberculosis condition which subsequently developed, is fairly established by the evidence. If the release, however, is a valid instrument; if it is in full force and effect; if by its terms and conditions the plaintiff is bound, then it is our judgment that it includes and covers, by virtue of its all-inclusive language, the conditions which subsequently

developed. The instrument purports to release the defendant from all liability for damages, losses or injuries " *whether developed or undeveloped, resulting or to result* " from the accident. The instrument is clearly intentionally designed to accomplish such purpose. If it is a binding and valid obligation; if it does preclude the plaintiff from the maintenance of this action, the fact that there may have been misunderstanding or mistake or a lack of knowledge as to future developments, is insufficient to avoid the effect of its provisions. The release is all-inclusive. We are of the opinion it cannot be set aside or canceled because of alleged mutual mistake of fact.

We are thus brought to a consideration of what we deem the vital question in this controversy. The instrument in question is a contract. It purports to release the defendant from liability in consideration of the payment of $200.70. For such consideration the plaintiff and her husband release and discharge the defendant from all liability, known or unknown, developed or undeveloped, resulting or to result, from the accident referred to in the instrument. One of the primary essentials for the validity of a contract is that the minds of the parties must meet and the agreement expressed must represent those conditions and those obligations upon which their minds have met.

It is urged that the husband of the plaintiff acted as her agent in all of the conferences and in the agreement made in the office of the attorneys for the defendant. We cannot agree with this contention. The plaintiff did not in any manner participate in the conferences. She was confined to the hospital under care and treatment. There is no proof, and it is not contended, that the plaintiff ever authorized or requested her husband to enter into any negotiations relative to her own personal injuries. No agency is to be implied as between husband and wife from the mere fact of marriage. (*Nash* v. *Mitchell*, 71 N. Y. 199; *Snyder* v. *Sloane*, 65 App. Div. 543; *LeLong* v. *Siebrecht*, 196 id. 74.)

It is well established that ignorance of the terms of a contract due to negligence or to inexcusable trustfulness, will not relieve a party from the obligations of the contract. (*Metzger* v. *Ætna Ins. Co.*, 227 N. Y. 411, 416, 417.) The ignorance of a party in signing a contract is immaterial unless he was deceived. (*Barker* v. *Conley*, 267 N. Y. 43, 47.) There is a presumption of knowledge of contents of a document signed. Failure to read or procure to be read has been held to be gross negligence, and the party cannot be relieved from liability. (*Metzger* v. *Ætna Ins. Co., supra; Pimpinello* v. *Swift & Co.*, 253 N. Y. 159; *Matter of Stone*, 272 id. 121, 124; *Shalgott Realty Co., Inc.*, v. *Whitney*, 238 App. Div. 266.)

Actual fraud in procuring the signature of the plaintiff to the release in question is not claimed. There was no fraud, no force or coercion, and we deem it proper at this point to remark that no act or conduct on the part of Mr. Dolan, representing the defendant, is subject to criticism or question in any form.

Proof of actual fraud is unnecessary to rescind a transaction which has been consummated through misrepresentation of material facts not amounting to fraud. (*Bloomquist* v. *Farson*, 222 N. Y. 375.)

Equity will, in a proper case, avoid and set aside a transaction induced or procured through material misrepresentations and false statements, although the statements and representations were honestly made, with no intent to deceive. (*Leary* v. *Geller*, 224 N. Y. 56; *Matter of Smith*, 243 App. Div. 348, 353.)

Where it is found that consents have been signed through misrepresentations, the doctrine that those who negligently sign a statement without reading it may be estopped or precluded from showing that in fact they never assented to its terms, does not apply. (*Pimpinello* v. *Swift & Co.*, supra; *Hutchison* v. *Ross*, 262 N. Y. 381, 400.)

The defendant having accepted the result of the efforts or acts of the husband of the plaintiff, is deemed to have adopted the methods employed to achieve those results. (*Taylor* v. *Commercial Bank*, 174 N. Y. 181; *Bloomquist* v. *Farson*, supra, 381; *Parton* v. *Metropolitan Life Ins. Co.*, 129 Misc. 493.)

It is not necessary, in order that a contract may be rescinded for fraud or misrepresentation, that the party making the misrepresentation should have known that it was false. Innocent misrepresentation is sufficient, and this rule applies to actions at law based upon rescission, as well as to actions for rescission in equity. (*Seneca Wire & Mfg. Co.* v. *Leach & Co.*, 247 N. Y. 1, 7, 8.)

When deception induced by misrepresentation relates to the nature of the contract which another is thereby induced to execute, and provides such essential error that the person so tricked and deceived may be said never to have intended to make any contract whatsoever of the nature alleged, the so-called contract is deemed to have been wholly void *ab initio*. In such a case there is no contract to be disaffirmed; it never existed by mutual consent. In such a case rescission is not the remedy; as a contract it is not susceptible of rescission. (*Whipple* v. *Brown Brothers Co.*, 225 N. Y. 237.)

Bearing in mind the well-established principles outlined, was the plaintiff induced by misrepresentation to sign the alleged release and is the same, by reason of the facts and circumstances, void and of no effect?

The testimony relative to the occurrence when the plaintiff signed the release is practically uncontroverted. The husband and son took the release to the hospital to have it executed as instructed by Mr. Dolan. The husband went to the room of the plaintiff. The son sought to find two nurses to act as witnesses. He found them, but the witness Walsh, then assistant floor supervisor, told him he would have to get someone in the office, as the hospital rules did not permit nurses to act in that capacity. The witnesses O'Brien and Mangan, whose names appear upon the release, were two office employees, Miss O'Brien going to the room of the plaintiff upon being asked to be a witness. She testified she did not know what the paper was; that she merely signed it; that there was no talk, and that it had already been signed by the plaintiff. Miss Mangan, the other witness, did not go to plaintiff's room, but signed the release in the office. The plaintiff testified that the statement made to her was that they wanted to pay the bills and get pay for the car, and said she would have to sign the paper; that her husband took it out of his pocket and she signed it; that they then went out of the room; that she went back to sleep; that on the evening of June fifth her husband again came to the hospital and said he wanted to pay the bills and she would have to sign the check; that he turned the check over and she signed it, without reading, on the back; that the next morning she asked Miss Walsh to call her husband and tell him not to cash that check. The fact of this call was corroborated by Miss Walsh. At about noon on June sixth, when preparing to leave the hospital, her husband came and she then asked him what that check was, and he told her it was for settlement, and she asked, " What did you settle for for me?  He told me he had seen the insurance company and that was the first I knew what had been done." The circumstances surrounding the signing of the release by the plaintiff, as testified to by her, are corroborated by the testimony of her husband and son. The husband testified that on the evening of June fifth he told the plaintiff he had a check for the expenses and she signed the check on the back; that up to that time he did not tell her she was settling any claim on her part; that early the next morning there was a phone call to him through Miss Walsh; that he then went to the hospital to help pack; that she made inquiries at that time as to what it was all for, and said there was nothing for her; that on their return to New York she called Mr. Frankel and he came and saw her at their home.

If this version of the transaction is correct; if it is an accurate statement of what actually occurred, we are of the opinion there was misrepresentation; that the minds of the parties never met;

that the plaintiff was led to believe the papers in question were for payment of expenses, and that she did not at any time enter into an agreement, understand or believe, or have knowledge that the instrument she signed released and relieved the defendant of all liability for any injuries she had suffered " whether developed or undeveloped, resulting or to result," from the accident.

It must be borne in mind that this all occurred the day after the plaintiff had been injured; that she had sustained a shock, had been given sedatives, and had been and was in pain. We do not find, however, from the record before us, from our observation of the witnesses upon the stand, and their manner of testifying, or from the facts and circumstances surrounding the entire transaction, any substantial ground for holding that the version of the plaintiff is untrue, unreasonable or not worthy of credence. It may well be held that there was no intent on the part of the husband to deceive, but such intent was not necessary if the plaintiff was induced to sign by misrepresentation, although the statements and representations were honestly made by the husband, who had been sent by the representative of the insurer to procure her signature. (*Leary* v. *Geller, supra.*)

The sole remaining question under the authorities is whether or not there was such gross negligence on the part of the plaintiff, such inexcusable trustfulness, that the plaintiff must be bound by the instrument she signed. In view of the circumstances which we have outlined; in view of the condition of the plaintiff; in view of the instrumentality which the insurer used for procuring the signature of the plaintiff, we are of the opinion the plaintiff is not bound. There can be no question but what the plaintiff immediately and reasonably, upon discovery by her of the nature of the instrument she had signed, repudiated the same, and that there was a seasonable offer to return and restore to the defendant the check of the attorneys for the insurer which had been delivered. We are of the opinion the purported release is null, void and of no binding effect whatsoever upon the plaintiff.

The motion of the defendant to dismiss the first reply to the affirmative defenses contained in the answer of the defendant to the amended complaint, and embraced within paragraphs " 3 " to " 9," inclusive, of the reply, is denied.

The motion of the defendant to dismiss the second reply to the affirmative defenses contained in the answer of the defendant to the amended complaint, and embraced within paragraphs " 10 " to " 14," inclusive, of the reply, is granted.

The motion of the defendant to dismiss the third reply to the affirmative defenses contained in the answer of the defendant to

the amended complaint, and embraced within paragraphs "15" to "21," inclusive, of the reply, is granted.

The motion of the defendant for a dismissal of plaintiff's complaint and the direction of judgment of no cause for action for the relief demanded in the answer, is denied.

The motion of the defendant to set aside the verdict of the jury and for a new trial upon all of the grounds specified in section 549 of the Civil Practice Act, excepting inadequacy of damages, is entertained and denied.

The motion of the plaintiff for the direction of judgment in accordance with the verdict of the jury for damages in favor of the plaintiff, Bertha Moses, and against the defendant, Benjamin F. Carver, for the sum of $3,000, is granted.

Directed accordingly.